UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SONJA NOWLIN, Plaintiff,

v. Civil Action No. 3:14-cv-612-DJH-LLK

NOVO NORDISK INC., et al., Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

While Sonja Nowlin was an employee at Novo Nordisk, she frequently took time off from work to care for her ailing father. (*See* D.N. 31-2, PageID # 191-93, 224, 238-39; D.N. 31-5, PageID # 432)  After Novo Nordisk terminated Nowlin in January 2013 for failing to document meetings she had with physicians, she sued. (D.N. 1-1; D.N. 31-7, PageID # 508) Nowlin claims that Novo Nordisk and her former boss, David Hance, violated her rights under the Family and Medical Leave Act and the Kentucky Civil Rights Act. (D.N. 1-1)  The defendants have moved for summary judgment, arguing that Nowlin's claims are factually and legally baseless. (D.N. 31)  The Court will grant the defendants' motion because Nowlin has failed to present evidence upon which a reasonable jury could find for her.

I.   BACKGROUND

A.

From April 2007 until her termination in January 2013, Nowlin was employed by Novo Nordisk, a pharmaceutical company, as a Diabetes Care Specialist (DCS) II. (D.N. 31-2, PageID # 194; D.N. 31-4, PageID # 380)  As a DCS, she was responsible for meeting physicians and trying to create demand for Novo Nordisk's products in the diabetes market. (D.N. 31-2, PageID # 197)  In the lingo of the industry such a meeting is known as a "call." (*Id*.)  Nowlin was

1

responsible for making eight calls a day and was required to record each call into an online Novo Nordisk report log. (*Id*., PageID # 202-03, 244) Nowlin admits that she did not always record her calls because she was sometimes too busy or would forget. (*Id*., PageID # 203)

Initially, Nowlin worked for Novo Nordisk in Illinois, but she subsequently requested and obtained transfers. (*Id*., PageID # 196, 198) The first was to Indiana, the second to Louisville, Kentucky to be closer to her father. (*Id*.) While in Indiana and Kentucky, she requested FMLA leave; Liberty Mutual, Novo Nordisk's third-party leave administrator, always granted her leave. (D.N. 31-2, PageID # 191-93, 224, 238-39; D.N. 31-5, PageID # 432) And David Hance, Nowlin's boss in Louisville supported her requests to take time off. (D.N. 31-2, PageID # 226-27)

Nowlin testified that she was not required to check email while on FMLA leave. (*Id*., PageID # 231) Still, on at least one occasion, she did. While on leave in August 2012, she received an email from Debbie Lankford, a sampling associate, asking her to return some damaged drug samples. (D.N. 31-5, PageID # 456) This occurred because prior to taking leave, Nowlin reported that she had some damaged samples, which she needed to return within ten days. (D.N. 31-2, PageID # 234) She did not return them before taking leave. (*Id*.) Two days after Lankford's email, Hance sent a follow-up email, asking her to return the samples "as soon as possible." (D.N. 31-2, PageID # 235) She mailed the samples back on Saturday, after her FMLA leave concluded, but before returning to work the next Monday. (*Id*.)

In late November or early December 2012, Hance conducted a review of DCS call activity across his district. (D.N. 31-8, PageID # 538) He found that Nowlin lacked some call activity, which led him to investigate further. (*Id*.) This investigation revealed that Nowlin had failed to record eight calls a day on numerous occasions. (D.N. 31-5, PageID # 473) On eleven

2

different days throughout 2012, she failed to record even a single call. (*Id*.) Hance reported his findings to his supervisor, Aimee Abramovitz, and a human resources manager, Erica Simmon. (D.N. 31-7, PageID # 505)

On December 13, 2012, Hance and Simmon held a telephone conference with Nowlin and provided her the opportunity to explain why she had failed to properly document her calls. (*Id*., PageID # 506) She did not have an explanation. (*Id*.; D.N. 31-2, PageID # 244, 246) That evening, Hance, Abramovitz, and Simmon decided to terminate Nowlin. (D.N. 31-7, PageID # 507) The human resources department recommended that they wait until after the holidays to terminate her. (*Id*.)

Also on the evening of December 13, 2012, Nowlin sent Hance an email summarizing certain documents that she was instructed to provide Hance and Simmon. (*Id*., PageID # 506) Hance responded, requesting more information. (*Id*.) A few days later, on December 17, 2012, Nowlin sent Hance and Simmon an email that filled in some, but not all, of her call-activity gaps. (*Id*., PageID # 519) Then, on January 2, 2013, Hance and Simmon discussed Nowlin's situation via telephone. (*Id*., PageID # 508) Later that day, Simmon provided Hance with a copy of Nowlin's termination letter for his signature. (*Id*.) The next day Nowlin called Simmon to raise concerns about Hance; Nowlin told Simmon that Hance "had not followed through with anything in regards to the communication that we had on December 13th." (D.N. 31-3, PageID # 255) In her deposition, Nowlin could not remember if she and Simmon discussed whether Hance was treating her differently based on gender, but she did recall that they "discussed different things that made [her] feel uncomfortable." (*Id*.) Novo Nordisk terminated her on January 4, 2013. (D.N. 31-2, PageID # 176) Hance hired a woman to replace Nowlin. (*Id*., PageID # 247)

**B.**

Nowlin sued Novo Nordisk and Hance in Kentucky state court. (D.N. 1-1) She claims that Novo Nordisk interfered with her FMLA rights, retaliated against her for taking FMLA leave, discriminated against her because of her gender, created a hostile work environment because of her gender, and retaliated against her in violation of Ky. Rev. Stat. Ann § 344.280. (*Id.*, PageID # 16-20) Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (D.N. 1) Defendants have now moved for summary judgment. (D.N. 31) In sum, they argue that Nowlin's claims are factually and legally baseless. (*Id.*) Nowlin's response to their motion fails to address the merits of two of her claims due to "the short time frame in which Plaintiff had to provide her response," (D.N. 40, PageID # 697-98), even though the Court granted her an extension of time to respond to Defendants' motion (D.N. 35).[1] Irrespective of Nowlin's failure to address all of the Defendants' arguments, the Court will grant summary judgment because there are insufficient facts supporting Nowlin's claims.

**II.     STANDARD**

The Court may only grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must point to specific facts in the record demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). It is not the Court's role to search the record "to

---

[1] The Court initially entered an agreed order extending the time Nowlin had to respond. (D.N. 33) On the date her response was due, Nowlin requested an additional extension of time. (D.N. 36) Magistrate Judge Lanny King denied Nowlin's request due to her failure to provide sufficient information to justify an extension. (D.N. 39)

establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The Court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Still, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Id.* The non-moving party must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *Grace v. USCAR & Bartech Tech. Servs.*, 521 F.3d 655, 661 (6th Cir. 2008) (applying the summary judgment standard to the plaintiff's FMLA claims). Moreover, the non-moving party must establish a genuine issue of material fact with respect to each element of each of her claims. *Celotex*, 477 U.S. at 322-23. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; instead, the non-moving party must present evidence upon which the jury could reasonably find for her. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 252).

### III. DISCUSSION

**A. Interference with FMLA Rights**

The evidence demonstrates that Novo Nordisk did not interfere with Nowlin's FMLA rights. Under the FMLA, it is unlawful for Novo Nordisk to "interfere with, restrain or deny the exercise of or attempt to exercise, any [FMLA] right provided." 29 U.S.C. § 2615(a)(1); *Grace*, 521 F.3d at 669. For Nowlin to establish a claim, she must show that "(1) [Nowlin] was an eligible employee; (2) [Novo Nordisk] was an employer subject to the FMLA; (3) [Nowlin] was entitled to leave under the FMLA; (4) [Nowlin] gave [her] employer notice of [her] intention to

5

take FMLA leave; and (5) [Novo Nordisk] denied [her] FMLA benefits to which [Nowlin] was entitled." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 840 (6th Cir. 2012) (citing *Grace*, 521 F.3d at 669).

Novo Nordisk contends that Nowlin failed to meet the fifth element because it never denied Nowlin leave, nor did it interfere with her FMLA rights. (D.N. 31-5, PageID # 153) The Court agrees. Nowlin concedes that she was never denied leave. (D.N. 31-2, PageID # 191-93, 224, 238-39) But she contends that her right to take leave was interfered with when Langford and Hance asked her to return damaged samples. (D.N. 40, PageID # 692) From the undisputed facts, the Court concludes that Nowlin was not required to check email (D.N. 32-2, PageID # 231); that she could have returned the samples prior to going on leave (*id.*, PageID # 234); that Langford reminded Nowlin to return the samples (D.N. 31-5, PageID # 456); that Hance merely asked her to return the samples "as soon as possible" (D.N. 31-2, PageID # 235); and that Nowlin mailed the damaged samples to Novo Nordisk over the weekend, just before returning to work. (*Id.*) There simply is no evidence of interference. *See Grace*, 521 F.3d at 669-670.

Nowlin relies on *Arban v. West Publishing Corp.*, 345 F.3d 390 (6th Cir. 2003) to argue that Novo Nordisk interfered with her FMLA leave. But that case is distinguishable from the one at hand. The *Arban* plaintiff was asked on several occasions to do work while on FMLA leave. *Id*. at 402. On one occasion, Arban's boss called his disability insurer to verify Arban's status, then made Arban meet with him even though Arban was on leave. *Id*. at 402-03. Arban was then fired. *Id*. Here, there is no evidence that Hance asked Nowlin to work while she was on FMLA leave. Nor is there any evidence indicating that Nowlin did in fact work while she was on leave. (*See* D.N. 31-6) Finding Nowlin's claim of interference to be meritless, the Court will grant Novo Nordisk summary judgment on this claim.

6

**B.     Retaliation for Taking FMLA Leave**

The Court will also grant Novo Nordisk summary judgment as to Nowlin's FMLA retaliation claim because there is no evidence that Novo Nordisk retaliated against Nowlin for taking FMLA leave.  To establish a prima facie retaliation case, Nowlin must show that "(1) [she] engaged in an activity protected by the Act; (2) Defendant[s] took an adverse employment action against [her]; and (3) that there was a causal connection between the protected activity and the adverse employment action."  *Romans,* 668 F.3d at 842 (citation omitted).  If Nowlin establishes a prima facie case, then the burden shifts to Novo Nordisk to "establish a legitimate, non-discriminatory reason for its action."  *Id*. (citation omitted).

Nowlin has failed to establish that there was a causal connection between her FMLA leave and her termination.  To establish a causal connection, Nowlin relies entirely on the temporal proximity between her FMLA leave in October 2012 and her termination in January 2013.  (D.N. 40, PageID # 693-94)  Though close temporal proximity between the protected activity and the adverse employment action is deemed indirect evidence of retaliation, *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004), temporal proximity alone is insufficient unless the temporal proximity is very close.  *Mickey v. Zeidler tool and Die co.*, 516 F.3d 516, 525 (6th Cir. 2008); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582-83 (6th Cir. 2000).  The two-month lapse here between Nowlin's FMLA leave and her termination alone is insufficient to establish a causal connection.  *See A.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013).  Thus, Nowlin must provide the Court with some evidence of a causal connection between her termination and her FMLA leave.  *Johnson*, 215 F.3d at 528-83 (internal quotation marks omitted).  But Nowlin has failed to put forth any evidence, aside from the temporal proximity, to

7

satisfy this element. The Court will therefore grant Novo Nordisk summary judgment on Nowlin's FMLA retaliation claim.

## C. Gender Discrimination

Nowlin's remaining claims arise pursuant to the Kentucky Civil Rights Act. Because of the KCRA's similarities to the federal Civil Rights Act, "Kentucky courts look to federal law in interpreting the [KCRA]." *Perry v. AutoZoners, LLC*, 948 F. Supp. 2d 778, 786 (W.D. Ky. 2013) (internal quotation marks omitted); *see Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992).

Even viewing the evidence in a light most favorable to Nowlin, her gender discrimination claim fails. She attempts to prove her claim using circumstantial evidence, as opposed to direct evidence. (D.N. 40, PageID # 695) Under this approach, Nowlin must establish a prima facie case of discrimination by showing that "1) [she] is a member of a protected class; 2) [she] was qualified for [her] job and performed it satisfactorily; 3) despite [her] qualifications and performance, [she] suffered an adverse employment action; and 4) that [she] was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class." *Johnson*, 215 F.3d at 572-73.

The parties dispute whether Nowlin has satisfied the fourth element by showing that there is a similarly situated individual outside of her protected class who was treated better than she was.[2] Nowlin contends that Michael Moss, a senior DCS, was similarly situated to her and only received a verbal warning when he failed to record calls. (D.N. 40, PageID # 696) She points to Moss's deposition as evidence that Moss "engaged in the same conduct—*i.e.* lack of recorded call activity—as Plaintiff, and only received a verbal warning." (D.N. 40, PageID # 696; *see*

---

[2] It is undisputed that Novo Nordisk replaced Nowlin with someone in her protected class. (*See* D.N. 31-2, PageID # 247)

D.N. 41-1, PageID # 989) Moss's testimony, however, is ambiguous. (D.N. 41-1, PageID # 989-90) He testified that he had received counseling, not a warning, about his calls. (*Id.*) His counseling amounted to receiving information on "anything call related," and "metrics on the region, stuff like that." (*Id.*, PageID # 990) Moss was also adamant that he was meeting Novo Nordisk's call-volume expectations. (*Id.*, PageID # 989-90) Even considering the testimony in the light most favorable to Nowlin, Moss's deposition does not support Nowlin's contention that Moss committed the same infraction but received a less severe sanction. In fact, Moss did not fail to record his call activity and did not receive a warning regarding such a failure. (*Id.*) Thus, the Court concludes that Moss's situation is not sufficiently similar to Nowlin's situation. *See Johnson*, 215 F.3d at 572-73. Nowlin has therefore failed to present evidence that a similarly situated individual outside of her protected class was treated better than she was. Consequently, Novo Nordisk will be granted summary judgment on this claim as well.

**D.     Hostile Work Environment**

Nowlin has also failed to establish a prima facie case of hostile work environment under the KCRA. To establish a prima facie case, she must show that "(1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).

The record contains no evidence that Nowlin was subjected to sexual harassment. In her response to Defendants' summary judgment motion, Nowlin states that she does not consent to dismissal of this claim, but "due to the short time frame in which Plaintiff had to provide her Response, Plaintiff is without the necessary time to provide a proper argument in support of her

9

claim." (D.N. 40, PageID # 697) This statement is disingenuous. Nowlin's counsel had ample time to respond to Defendants' motion. Local Rule 7.1(c) gives a party opposing a motion twenty-one days to respond. With the extension granted by the Court (D.N. 33), Nowlin received fourteen additional days to file her response.

In Nowlin's complaint, she points to Hance's questions about Nowlin's father's health as the basis for her hostile work environment claim. (D.N. 1-1, PageID # 18-19) But Nowlin herself testified that when Hance asked her about her father, it was to see "how he was doing and what was the situation, where things stood." (D.N. 31-2, PageID # 237) He never told her that she had to leave her father to work. (*Id.*) Nowlin also conceded in her testimony that Hance told her to call him if she needed anything. (*Id.*, PageID # 227) Nowlin offers no evidence that she was harassed. And it is not the Court's role to search the record for a genuine issue of material fact. *See Street*, 886 F.2d at 1479. Thus, the Court will grant Novo Nordisk summary judgment on Nowlin's claim of hostile work environment.

**E.      KCRA Retaliation**

Nowlin also failed to respond to Defendants' contention that her KCRA retaliation claim, which is against both Novo Nordisk and Hance, should be dismissed. (D.N. 40, PageID # 697) Ky. Rev. Stat. Ann. § 344.280 declares it unlawful "[t]o retaliate or discriminate in any manner against a person because [she] has opposed a practice declared unlawful by this chapter." To establish a prima facie claim of retaliation under the KCRA, Nowlin must establish that (1) "she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against [her], and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008).

The record contains insufficient evidence to establish that Nowlin opposed a practice declared unlawful by the KCRA. Her complaint simply states that her protected activity was contacting "a HR representative about Mr. Hance's unacceptable Behavior." (D.N. 1-1, PageID # 20) During her deposition, Nowlin could not remember if she discussed with Simmon of Novo Nordisk's human resources department whether Hance treated her differently because of gender. (D.N. 31-3, PageID # 255) She mentioned that Hance made her feel uncomfortable, but she did not elaborate. (*Id.*) Even taking the evidence in the light most favorable to Nowlin, this mere scintilla of evidence is insufficient to establish that she engaged in protected activity under the KCRA or that she opposed a practice declared unlawful by the KCRA. The Court will therefore grant Defendants' summary judgment on this claim.

## IV.     CONCLUSION

Nowlin has failed to point to specific facts in the record upon which a reasonable jury could find for her. Her two FMLA and three KCRA claims are unsupported by the evidence. In fact, two of her KCRA claims are supported only by the bare allegations in her complaint, and the Court will not search the record to establish a dispute of a material fact. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Defendants' motion for summary judgment (D.N. 31) is **GRANTED**.

(2)     A separate judgment will issue this date.